## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DAVID TOBEY,                          :
                                      :
    Plaintiff,                    :
                                      :     Civil Action File No.
v.                                    :     1:23-CV-0523--TWT
                                      :
LOWE'S HOME CENTERS, LLC,             :
                                      :
    Defendant.                    :
_____:

## <u>PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

COMES NOW David Tobey ("Tobey") and files this his Brief in Opposition of Defendant Lowe's Home Centers, LLC's ("Defendant" or "Lowe's") Motion for Summary Judgment, showing as follows:

## <u>INTRODUCTION</u>

On June 9, 2022, Tobey contracted to rent a Ford F-250 truck that the Lowe's in Cornelia, Georgia makes available for rental by the public for use in his furniture moving business. That evening, Tobey, a repeat truck rental customer, spoke with a Lowe's employee by phone. According to Tobey, the employee agreed to extend the initial 4-hour rental period for multiple days to allow him to complete several pending moving jobs—and declined Tobey's offer to prepay for the additional rental period by running his credit card on file. Tobey's phone records and a Lowe's call

log each reflect that the June 9 call occurred around 7 p.m. and lasted approximately 40 seconds. According to Lowe's internal call log, Lowe's made only one additional call to Tobey's phone number on June 10, which lasted one second.

Four days later, on June 13, acting at the direction of Lowe's corporate office, a department supervisor, John Shaffer, contacted the police and reported the truck as stolen. Shaffer did not consult with the employees at the equipment rental desk that had interacted with Tobey before making the report.

The police report reflects that Shaffer made material misstatements of fact to the responding officer. According to the report, "[a]t 1930 hours on [June 9] the vehicle had not been returned and there was negative results when they attempted to make contact with Tobey. Multiple attempts have been made each day since this with negative results." As noted above, Lowe's own phone records reflect that its employee spoke with Tobey for 40 seconds on June 9, and that Lowe's made only *one* additional call to Tobey's phone number on June 10—not "multiple attempts."

Tobey voluntarily returned the truck the morning of June 14 before the store opened while on his way out of town for a personal trip. In August 2022, Tobey was arrested in August 2022 for felony theft by taking of the truck, strip searched, and spent two days in jail. The charges against Tobey were eventually dismissed by the district attorney.

Summary judgment is inappropriate on Tobey's claim for malicious

prosecution based on the following evidence. First, Tobey's testimony is that a Lowe's employee verbally agreed during a phone call the evening of June 9, 2022 to extend the contractual rental period for several days. While Lowe's disputes the substance of that call, the material dispute over whether Lowe's agreed to extend the contractual rental period, such that Tobey was in lawful possession of the truck at the time it was reported stolen, must be resolved by a jury.

Second, Lowe's violated its own policy that requires three attempts to contact a customer by phone after the contractual rental period expires before reporting the vehicle as stolen, with escalating verbal or voicemail warnings that the vehicle will be reported as stolen if not promptly returned. The internal call log produced by Lowe's in discovery reflects only two attempts to call Tobey—one call, lasting forty seconds, on June 9 and a second call, lasting one second, on June 10. There is no evidence that Tobey was warned that the vehicle was going to be reported as stolen.

Third, Shaffer made a materially false report of Lowe's efforts to contact Tobey regarding the return of the truck. Shaffer affirmatively misrepresented that Lowe's had been unable to make contact with Tobey on June 9 and had purportedly made "multiple" attempts to contact him each of the next three days. Accordingly, there are genuine issues of fact for a jury and summary judgment must be denied.

## STATEMENT OF FACTS

### I.  FACTUAL BACKGROUND

In 2022, Tobey operated a business called Tobey's Delivery and Moving Services. Plaintiff's Deposition 12:22 – 13:1; 15:23 – 15:25 ("Pl's Depo." is attached as Exhibit A). As a part of his business, Tobey would pick up furniture, deliver the furniture to a residential address, and then unbox the furniture for customers. Pl's Depo. 32:20 – 32:23.

On June 9, 2022, Tobey rented a 2019 Ford F-250 truck (the "Truck") from Defendant's retail location in Cornelia, Georgia. Pl's Depo. 73:04 – 73:12. Tobey rented the Truck for the purpose of making deliveries for his business. Pl's Depo. 23:25 - 24:10, 56:13, 77:17 – 77:19. Tobey rented the Truck at approximately 11:30 AM for an initial rental period of four hours. Pl's Depo. 73:04 – 73:12. At the time Tobey rented the Truck, Tobey informed the employee assisting him that he did not know how long he would need the Truck, and the employee "advised [Tobey] to just pay for the four hours and if [Tobey] needed it for additional hours just call back and [Tobey] could pay the difference." Pl's Depo. 74:14 – 74:19.

Tobey had previously rented the Truck from Defendant on multiple occasions. Pl's Depo. 21:12 – 21:18; Deposition of Chuck Harrill 12:9 – 12:11("Harrill Depo." is attached and incorporated herein as Exhibit B). Chuck Harrill ("Harrill"), a customer service associate at Defendant's Cornelia location, testified that he had

"zero issue whatsoever" with Tobey renting vehicles previously and regarded Tobey as a "really standup guy." Harrill Depo. 12:2, 12:15.

Later in the day on June 9, 2022, Tobey spoke by phone to an employee of Defendant and requested to extend the rental period. Pl's Depo. 33:10 – 33:16; Defendant's Phone Call Log to Plaintiff (The "Call Log" is attached and incorporated herein as Exhibit C). While speaking to an employee of Defendant, Tobey stated that he would need the Truck throughout the rest of the day and likely for multiple additional days. Pl's Depo. 33:10 – 33:16; 34:9 – 34:13. Defendant's employee represented to Tobey that Tobey could "settle up" with Defendant when he returned the Truck because Tobey did not know how much additional time he needed. Pl's Depo. 34:14 – 34:21.

John Shaffer ("Shaffer"), the Department Supervisor of the Tool Rental Department at the Defendant's Cornelia location, testified that associates in the Tool Rental Department are authorized to grant such rental extensions over the phone. Deposition of Shaffer 10:5-10:11 ("Shaffer Depo."; attached as Exhibit D). Further, Lowe's Customer Rental Vehicle Unauthorized Use Policy states that when a renter has retained the vehicle beyond the initial rental period, the renter should be contacted by phone and asked, "if the renter would like to extend the rental period and pay the additional fees." Customer Rental Vehicle Unauthorized Use Policy (The "Unauthorized Use Policy" is attached as Exhibit E).

Tobey does not recall who he spoke with by phone on June 9, 2022, but believes the employee was female. Pl's Depo. 34:15 – 34:16. While Shaffer asserts that Tobey spoke by phone with Harrill on June 9, 2022, Harrill testified that he spoke to Tobey by phone not on June 9, 2022, but June 11, 2022. Shaffer Depo. 14:8 – 14:10, 19:7 – 19:9; Harrill Depo. 18:23 – 18:25. Furthermore, the rental truck agreement bears a written notation that states, "CONTACTED @ 7:30 P. HE SAID IT WOULD BE ANOTHER HOUR." The rental truck agreement is attached as Exhibit F. The notation is dated 06/11/22 and bears Harrill's initials. Ex. F; Harrill Depo. 18:11 – 18:13.

Harrill testified that at the time he spoke to Tobey he was not considering calling law enforcement and that "[w]e were simply waiting for a customer to return a rental." Harrill Depo. 20:1 – 20:3. Tobey denies that he told an employee of Defendant that he would need the Truck for only another hour. Pl's Depo. 35:10 – 35:17, 47:6 – 47:12.

Pursuant to Lowe's Unauthorized Use Policy, employees should "contact the renter immediately after the initial rental period;" "[u]se a Lowe's approved phone to contact the customer. Personal devices should not be utilized to contact the renter;" and "[a]ttempt to contact the renter three times over the next 24HRs after the rental period expired." Ex. E, ¶ 4. Further, the Unauthorized Use Policy directs employees to inquire as to whether the renter desires to extend the rental period for

additional fees. Ex. E, ¶ 6. When employees are unable to reach a renter by phone, the Unauthorized Use Policy directs that three attempts to reach the renter should be made over a three-hour time frame. Ex. E, ¶ 12. Employees are directed to leave a voicemail during each call. While leaving the third voicemail, customer service associates are directed to state that the Truck will be reported to law enforcement as Unauthorized Use. Ex. E, ¶ 15; Shaffer Depo. 37:6 – 37:11.

Shaffer testified that he instructed the customer service associates in the Tool Rental Department to track each of their attempts to contact Tobey regarding the Truck on a handwritten log. Shaffer Depo. 22:2 – 22:6. The Contact Tracker is attached as <u>Exhibit G</u>. Notably, the Contact Tracker notes three purported attempts to contact Tobey: (1) a call at 4:08 P.M. on June 10, 2022, (2) three calls to a wrong number at 11:22 A.M. on June 11, 2022 followed by a call from Harrill's personal phone, and (3) a call at 1:47 P.M. on June 11, 2022 that "did not even ring in to [Tobey's] phone." Ex. G.

By contrast, Defendant's Call Log reflects that only two calls were made to Tobey's phone number from Defendant's number on or after June 9, 2022. Ex. C. First, the Call Log reflects a 40 second phone call with Tobey at 7:11 P.M on June 9, 2022. Ex. C. Second, the Call Log reflects a phone call to Tobey's phone number at 4:06 P.M on June 10, 2022. Ex. C. No voicemails were left on Tobey's phone from any employee of Defendant. Shaffer Depo. 37:22 – 37:25.

Shaffer testified that the last attempt that he or any of Defendant's associates in the Tool Rental Department made to contact Tobey was June 11, 2022, at 1:47 P.M. Shaffer Depo. 22:21; Ex. G ("attempted to call again, did not even ring in to his phone."). The alleged June 11, 2022, call to Tobey does not appear on Defendant's Call Log. Ex. C. However, the handwritten notation on the Contract suggests that the last direct contact made with Tobey could have been at 7:11 P.M. on June 11, 2022, when Harrill noted that it "would be another hour." Ex. F.

On Sunday, June 12, 2022, Tobey went out of town for a brief trip. Pl's Depo. 37:25 – 38:1, 38:8 – 38:9. Tobey testified that on Sunday he asked his friend, Victor Leamon ("Leamon"), to return the Truck Defendant's Cornelia location on June 12, 2022. Pl's Depo. 10:8 – 10:10, 39:2, 63:23 – 64:6. Tobey periodically hired Leamon to assist with his moving business. Pl's Depo. 30:17 – 30:20. Leamon assisted Tobey June 10-12, 2022. Deposition of Leamon ("Leamon Depo."; attached as <u>Exhibit H</u>) 10:21 – 10:22.

Leamon testified that he "was supposed to return [the Truck] Sunday [June 12, 2022]." Leamon Depo. 13:14. Leamon further testified Tobey "asked me, uh, Sunday to take [the Truck] back. And I told him, yeah, I got it. And I forgot all about it. And the next day, [Tobey is] like, hey, what the hell? I was like, sorry." Leamon Depo. 13:22 – 14:1.

Tobey subsequently returned the Truck to Defendant's Cornelia location in the early morning hours of June 14, 2022. Pl's Depo. 43:25 – 44:1; Shaffer Depo. 25:7; Ex. F. Because Defendant's Cornelia location did not have a drop box to leave the Truck's keys, Tobey left the keys to the Truck on the floorboard as he had been instructed previously by one or more employees of Defendant. Pl's Depo. 22:4 – 22:9.

On June 13, 2022, Shaffer contacted the Cornelia Police Department and spoke with Officer Eric Palmer ("Officer Palmer") in order to file an "unauthorized use report." Shaffer Depo. 20:16 – 20:19; Cornelia PD Incident Report (The "Incident Report" is attached as Exhibit I). The Incident Report states, "At 1930 hours on [June 9, 2022] the vehicle had not been returned and there was negative results when they attempted to make contact with Tobey." Ex. I, Narrative ¶ 2.

Contrary to the statements in the Incident Report, the sole attempt to contact Tobey on June 9, 2022, was successful as Tobey spoke by phone with an employee of Defendant. Ex. C.; Pl's Depo. 33:10 – 33:16. Although the identity of such employee is in dispute, Shaffer identifies the employee as Harrill. Shaffer Depo. 14:8 – 14:11 ("Chuck [Harrill] called on the 9th, that night. That's when Mr. Tobey told him he would be back within the hour.").

In addition, the Incident Report states, "[m]ultiple attempts have been made each day since this with negative results." Ex. I, Narrative ¶ 2. Defendant's Call Log

reflects that only one call was made by Defendant to Tobey's phone number after June 9, 2022. Ex. C. Despite Shaffer and Harrill's contentions that additional attempted calls were made to Tobey's phone number, such additional calls are not on Defendant's Call Log. Ex. C. Shaffer himself testified that it was inaccurate to state multiple attempts were made to contact Tobey each day. Shaffer Depo. 24:12 – 24:13 ("We did attempt to contact [Tobey], but not multiple times."). Moreover, Shaffer testified "I can't answer for why – why it's put in that way, other than unless we told him that. But I don't recall telling him that, because I was just going off my notes." Shaffer Depo. 24:5 – 24:8.

 As a result of the Incident Report, Officer Palmer obtained a warrant charging Tobey with Felony Theft by Taking in violation of O.C.G.A. § 16-8-2 and entered the Truck into NCIC/GCIC as stolen. Ex. I, Narrative, ¶ 3. A BOLO was put out for the Truck on July 14, 2022, after the Truck had been returned to Defendant's Cornelia location. Ex. I, Supplement, ¶ 1.

 On August 3, 2022, nearly two (2) months after the Truck was returned, Tobey was arrested by the Clarkesville City Police Department pursuant to the warrant issued by the Cornelia Police Department. Pl's Depo. 45:25 – 46:21. As a result of the arrest, Tobey was strip-searched, and spent two nights in jail. Pl's Depo. 48:6 – 48:9, 48:12 – 48:15. On November 9, 2022, the warrant against Tobey was dismissed

by the Mountain Judicial Circuit District Attorney's Office. A copy of the Dismissal of Warrant is attached as Exhibit J.

Tobey was "embarrassed" and "humiliated" by the arrest, and he testified that his experience in jail was "[n]othing [he] ever want[ed] to experience." Pl's Depo. 48:9, 49:6, 51:9. Adding insult to injury, Tobey's arrest was subsequently published in a local publication. Pl's Depo. 50:12 – 50:19. As a result of his embarrassment from the arrest, Tobey has withdrawn socially and secluded himself. Pl's Depo. 51:6 – 51:9. Furthermore, as a result of the arrest, Tobey's business lost its primary channel for obtaining customers. Pl's Depo. 67:6 – 67:18, 68:23. Tobey testified that he is unable to get more business because of the arrest. Pl's Depo. 69:8 – 69:11.

With regard to payment for the Truck, Tobey testified that he recalled providing Defendant with a credit card when initially renting the Truck. Pl's Depo. 35:1 – 35:3, 35:20, 36:1-3, 44:8, 100:7 – 100:8. At the time of the rental, Defendant's normal practice was to obtain payment from the renter prior to the rental period. Shaffer Depo. 28:10 – 28:14. Pursuant to paragraph 16 of the Contract, "[p]ayment is due upon Lowe's request. You consent to the reservation of credit for estimated charges due, and authorize Lowe's to process all amounts due on your credit card."

Tobey testified that he has not received an invoice for the balance of the rental period. Pl's Depo. 84:17 – 84:18 ("I never received a statement, bill, nothing."). This

testimony is corroborated by Shaffer who stated to his knowledge Tobey had not been contacted to pay the additional money for the rental. Shaffer Depo. 28:18.

## ARGUMENT AND CITATION OF AUTHORITY

### I.   STANDARD OF REVIEW

To prevail on its Motion for Summary Judgment, Defendant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the exacting burden of demonstrating that there is no dispute as to any material fact in the case." Clark v. Union Mut. Life. Ins. Co., 692 F.2d 1370, 1372 (11th Cir. 1982).

When considering a motion for summary judgment, the trial court should "view the evidence, draw all reasonable factual inferences, and resolve all reasonable doubts in favor of the non-movant." Stryker v. City of Homewood, 978 F.3d 769, 773 (11th Cir. 2020). Importantly, "[i]f the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Clemons v. Dougherty County, 684 F.2d 1365, 1369 (11th Cir. 1982). Furthermore, "[e]ven when the underlying facts are undisputed, summary judgment is improper if those facts can lead to conflicting inferences on material issues." Carrizosa v. Chiquita Brands Int'l, Inc., 47 F.4th 1278, 1328 (11th Cir. 2022). When reasonable minds could reach differing inferences from the undisputed facts, "summary judgment should not be granted, and a fact finder should be permitted to determine which inferences to accept." Id. at 1334.

II.    GEUNINE DISPUTES OF MATERIAL FACT REGARDING MALICE
       AND PROBABLE CAUSE PRECLUDE SUMMARY JUDGMENT AS
       TO TOBEY'S MALICIOUS PROSECUTION CLAIM

Because there are genuine disputes as to material facts regarding Tobey's claim for malicious prosecution, Defendant is not entitled to summary judgment as a matter of law. Under Georgia law, a plaintiff states a claim for malicious prosecution when he shows "(1) prosecution for a criminal offense; (2) instigated without probable cause; (3) with malice; (4) under a valid warrant, accusation, or summons; (5) which has terminated favorably to the plaintiff; and (6) has caused damage to the plaintiff." Trident Wholesale, Inc. v. Brown, 370 Ga. App. 505, 509 (2024); O.C.G.A. § 51-7-40.

Here, the undisputed evidence shows that Tobey's arrest and subsequent prosecution occurred under a valid warrant, was terminated favorably to Tobey, and caused damage to Tobey. Despite Defendant's conclusory contention that Tobey cannot establish that his arrest and prosecution were done with "malice in the absence of probable cause," these considerations are each within the purview of a finder of fact. See Defendant's Brief in Support of Its Motion for Summary Judgment ("Def.'s Brief"), p. 11.

A. Whether Tobey's arrest and prosecution lacked probable cause is a
   determination for the finder of fact.

Importantly, "[w]ant of probable cause is the gravamen of an action for malicious prosecution." Lagroon v. Lawson, 328 Ga. App. 614, 622 (2014). Pursuant

to O.C.G.A. § 51-7-43, "[l]ack of probable cause shall exist when the circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused. Lack of probable cause shall be a question for the jury, under the direction of the court."

Indeed, "probable cause is always a question for the jury unless from undisputed facts it is obvious to the court that it does or does not exist." Harmon v. Redding, 135 Ga. App. 124, 125-26 (1975) "Only where the material facts are not in dispute, or when only one reasonable inference can be drawn from the evidence, does the existence of probable cause become an issue of law for the court to resolve." Kviten v. Nash, 150 Ga. App. 589, 590-91 (1979).

As a rule, "[n]o probable cause exists if a defendant 'knew that the facts stated to the law enforcement were false or if he failed to make a fair, full, and complete statement of the facts as they existed, or if he concealed facts. The defendant's belief then could not possibly be 'honest' or 'reasonable.'" Horne v. J.H. Harvey Co., 274 Ga. App. 444, 448 (2005) (internal citations omitted).

Here, there is a genuine dispute as to material fact as to whether Shaffer, as a representative of Defendant, had knowledge that the information he supplied to Officer Palmer was false, or whether Shaffer failed to make a fair, full, and complete statement of the facts as they existed. Specifically, there are at least three material, false representations contained in the Incident Report.

First, during Tobey's phone conversation with an employee of Defendant on June 9, 2022, Tobey requested to extend the rental period of the Truck. Pl's Depo. 33:10 – 33:16; Ex. C. During this conversation, Tobey informed the employee that he would likely need the Truck for multiple additional days.  Pl's Depo. 33:10 – 33:16; 34:9 – 34:13. Because Defendant permitted renters to extend the rental period by phone, a trier of fact could infer that Tobey's conversation was sufficient to extend his rental period. Shaffer Depo.10:5-10:11. Thus, any report to law enforcement regarding Tobey's rental would not be a fair, full, and complete statement of the facts as they existed.

Second, while making the report to Officer Palmer, Shaffer represented that as of 7:30 P.M. on June 9, 2022, the Truck had not been returned and Defendant had been unable to make contact with Tobey. Ex. I., Narrative ¶ 2. However, it is undisputed that Tobey had a telephone conversation with an employee of Defendant on June 9, 22022 at approximately 7:11 P.M. See Ex. C (Call Log); Shaffer Depo. 14:8 – 14:11 ("Chuck called on the 9th. I'm sorry. It – it was due on the 9th. Chuck called on the 9th, that night. That's when Mr. Tobey told him he would be back within the hour."). While the identity of the employee who spoke to Tobey on June 9, 2022 and the content of such discussion are disputed, the mere fact that Tobey had been contacted is essential information for the purposes of the Incident Report and whether the Truck had been stolen. Importantly, with regard to this language in the

Incident Report, Shaffer testified, "I can't – I can't answer for why – why it's put in that way, other than unless we told him that. But I don't recall telling him that, because I was going off my notes." Shaffer Depo. 24:5 – 24:8.

Third, Shaffer represented to Officer Palmer that "multiple attempts" to contact Tobey had been made each day since June 9, 2022. Ex. I, Narrative ¶ 2. In fact, the Call Log reflects only one additional call to Tobey, which occurred on June 10, 2022, at approximately 4:06 P.M. Ex. C. Although two additional attempts to contact Tobey are listed on Defendant's Contact Tracker, neither of these purported attempts registered on Defendant's Call Log. Ex. I, Narrative, ¶ 2; Ex. C. Whether the two additional calls were made are a question of fact for the jury.

Nevertheless, even if such attempts to contact Tobey were made, these additional contacts do not constitute "multiple attempts…made each day since [June 9, 2022]." Ex. I, Narrative, ¶ 2. During his deposition, Shaffer was asked, "[t]he next sentence says multiple attempts have been made each day since this with negative results. That's not an accurate statement; correct?" to which Shaffer confirmed, "Correct. We did attempt to contact, but not multiple times." Shaffer Depo. 24:9 – 24:13. Further, Shaffer was asked, "[a]nd there were no attempts to contact on June 12th or 13th; correct?" Id. at 24:14 – 24:15. Shaffer responded, "[c]orrect." Id. at 24:16. Defendant's efforts to contact Tobey directly contribute to a consideration of whether Tobey had perpetrated a crime against Defendant by retaining the Truck.

Even if Defendant were to assert that Shaffer unintentionally provided inaccurate information to Officer Palmer, "a jury issue exists as to whether [Defendant's] actions evinced a reckless disregard or a conscious indifference for [Tobey's] rights." See Horne, 274 Ga. App. at 449.

Accordingly, a finder of fact should be permitted to determine whether multiple attempts were made to contact Tobey each day since June 9, 2022, and if multiple attempts had not been made each day, whether this fact constitutes a lack of probable cause.

## B. A finder of fact could infer an existence of malice upon a finding that Tobey's arrest and subsequent prosecution lacked probable cause.

Similarly, Defendant's claim that Tobey cannot show malice as a matter of law is without basis. "To establish malice sufficient to authorize a recovery in cases of this kind, it is not necessary to prove the existence of personal hatred, ill-will, or motives of revenge on the part of the prosecutor toward the accused." Bailey v. Century Fin. Co., 118 Ga. App. 90, 91-92 (1968). "Malice can be inferred from a total lack of probable cause and this is also a jury question." Jones v. Walker, 167 Ga. App. 286, 287 (1983).

Here, as stated above, a finder of fact could determine that Tobey's arrest and subsequent prosecution lacked probable cause because Shaffer, on behalf of Defendant, provided law enforcement with information that was not "full, fair, and complete" and potentially, "concealed facts." Horne, 274 Ga. App. at 448.

Therefore, because a finder of fact could find a lack of probable cause, malice may also be inferred.

Nonetheless, a finder of fact could determine that malice exists separate and apart from its consideration of probable cause. Under Georgia law, "[t]he 'malice' contemplated by law in an action for malicious prosecution…'may consist in personal spite or in a general disregard of the right consideration of mankind, directed by chance against the individual." Mungford, Inc. v. Anglin, 174 Ga. App. 290, 292 (1985). Additionally, "[m]alice may be also inferred 'if defendant's acts were wanton or were done with a reckless disregard for or conscious indifference to the rights of the plaintiff." K-Mart Corp v. Lovett, 241 Ga. App. 26, 28 (1999).

Here, a finder of fact could find that Defendant had not complied with its own Unauthorized Use Policy prior to contacting the authorities. Specifically, as Defendant was unable to make contact with Tobey, Defendant's policy requires employees to make three attempts to reach the renter over a three-hour time frame. Ex. E, ¶ 12. As noted previously, there is a question of fact as to the total number of attempts to contact Tobey. Moreover, Defendant did not leave a voicemail for Tobey alerting him that they would be reporting him to law enforcement. Ex. E, ¶ 15; Shaffer Depo. 37:6 – 37:11. If a finder of fact finds that Defendant breached its Unauthorized Use policy, then it could further find that such a breach was a "general disregard of the right consideration of mankind, directed by chance against the

individual." <u>Mungford, Inc.</u>, 174 Ga. App. at 292. Therefore, summary judgment should be precluded because the record contains evidence that could lead a finder of fact to determine an existence of malice.

C. <u>Even if Tobey's claims for false arrest and false imprisonment are precluded by his claim for malicious prosecution, his claims for malicious prosecution and false imprisonment should proceed.</u>

To the extent Defendant argues that Tobey's claims for false arrest, false imprisonment, and malicious prosecution are mutually exclusive, Tobey's claim for malicious prosecution should proceed. <u>See</u> <u>generally</u> <u>Sheffield v. Futch</u>, 354 Ga. App. 661 (2020) (denying summary judgment as to claims for malicious prosecution and false imprisonment).

D. <u>Whether a trier of fact could find the existence of probable cause with regard to O.C.G.A. § 16-8-5 is irrelevant to the case at bar, and, even if relevant, should be reserved for a trier of fact.</u>

Although the warrant against Tobey lists the offense as "Theft by Taking," Defendant attempts to argue that Tobey is unable to show a lack of probable cause by asserting that probable cause exists with regard to the offense of "theft of services." Specifically, Defendant asserts that a trier of fact could infer that Tobey intended to avoid payment by returning the property at a time posted beyond the business hours of the owner. Notably, whether a trier of fact could make such an inference should be left to the trier of fact. <u>See</u> <u>Clemons v. Dougherty County</u>, 684

F.2d 1365, 1369 (11th Cir. 1982) (holding "[i]f the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial.").

Pursuant to O.C.G.A. § 16-8-5, "[a] person commits the offense of theft of services when by deception and with the intent to avoid payment he knowingly obtains services, accommodations, entertainment, or the use of personal property which is available only for compensation." Here, Tobey obtained the use of personal property available only for compensation, but there is no evidence that he intended to do so "by deception" nor that he possessed the requisite mens rea.

A trier of fact should be permitted to determine whether Tobey intended to avoid payment may be made. Tobey testified that he provided Defendant with a credit card when he initially rented the Truck. Pl's Depo. 35:1 – 35:3, 35:20, 36:1-3, 44:8, 100:7 – 100:8. He further testified that he believed Defendant would run his credit card over the phone. Pl's Depo. 34:13 – 34:14. Similarly, Defendant's Contract states that "[p]ayment is due upon Lowe's request. You consent to the reservation of credit for estimated charges due, and authorize Lowe's to process all amounts due on your credit card." Ex. F, ¶ 16. Tobey's testimony shows that he intended that Defendant would charge his credit card for the extended rental period. Accordingly, the record reflects a genuine dispute of material fact as to whether Tobey intended to avoid paying for the extended rental time.

III.    GEUNINE DISPUTES OF MATERIAL FACT REGARDING TOBEY'S
CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL
DISTRESS PRECLUDE SUMMARY JUDGMENT.

To recover on his claim for Intentional Infliction of Emotional Distress
("IIED"), Tobey must establish that: (1) Defendant's conduct was intentional or
reckless; (2) Defendant's conduct was extreme and outrageous; (3) a causal
connection between the wrongful conduct and the emotional distress; and (4) the
emotional harm was severe. See Reid v. Waste Industries USA, Inc., 345 Ga. App.
236, 243 (2018).

At the outset, the Court must view the evidence, draw all reasonable factual
inferences, and resolve all reasonable doubts in Tobey's favor. See Stryker v. City
of Homewood, 978 F.3d 769, 773 (11th Cir. 2020). Construing the evidence in
Tobey's favor, the alleged conduct meets the standard of intentional infliction of
emotional distress. Specifically, the conduct must "be of such serious import as to
naturally give rise to such intense feelings of humiliation, embarrassment, fright or
extreme outrage as to cause severe emotional distress." Turnage v. Kasper, 307 Ga.
App. 172, 182 (2010).

In considering "whether the objected-to conduct can reasonably be
characterized as outrageous or egregious, a jury may consider evidence of a
defendant's malicious purpose or wanton disregard of a plaintiff's rights." K-Mart
Corp. v. Lovett, 241 Ga. App. 26, 29 (1999). Here, Defendant's malicious conduct

and wanton disregard of Tobey's rights are at the center of this controversy. A finding that Defendant's conduct was "extreme or outrageous" could be made based on three independent findings.

First, Tobey contends that he spoke with an employee of Defendant on June 9, 2022, specifically requesting to extend the rental period of the Truck. Pl's Depo. 33:10 – 33:16. Though this contention is challenged by Defendant, a finder of fact should determine whether Defendant had knowledge that the rental period had been extended. Defendant's conduct in reporting Tobey to law enforcement is clearly extreme and outrageous when considering that Defendant knew that the Truck was lawfully possessed by Tobey at the time.

Second, even if a finder of fact were unable to conclude that Defendant knew that Tobey extended the rental period, such finder of fact should be permitted to consider whether the actions of Defendant's employee(s) in conveying information that they knew were false or failing to make a fair, full, and complete statement of facts could result in a determination that Defendant instigated the prosecution without probable cause and with malice, and as a result, had a wanton disregard of Tobey's rights. As stated above, a wanton disregard of the plaintiff's rights will support a finding that the conduct was outrageous or egregious. See K-Mart, 241 Ga. App. at 29.

Third, a fact finder could also conclude that Defendant's conduct was egregious and outrageous because the record reflects that Defendant's employees violated Defendant's Unauthorized Use policy prior to reporting Tobey to law enforcement, which resulted in his meritless arrest. Such a finding would also be a wanton disregard of the plaintiff's rights, which would support a finding that the conduct was outrageous or egregious.

In any event, the evidence shows that Tobey "embarrassed" and "humiliated" by the arrest, and he testified that his experience in jail was "[n]othing [he] ever want[ed] to experience." Pl's Depo. 48:9, 49:6, 51:9. Tobey's embarrassment was made worse when details of Tobey's meritless arrest was subsequently published in a local publication. Pl's Depo. 50:12 – 50:19. As a result of his embarrassment from the arrest, Tobey has withdrawn socially and secluded himself. Pl's Depo. 51:6 – 51:9. The embarrassment and humiliation that Tobey has endured, which he has alleged are severe, were naturally evoked as a result of his meritless arrest and prosecution.

## IV.  THERE IS A GENUINE DISPUTE OF MATERIAL FACT AS TO WHETHER TOBEY BREACHED THE RENTAL CONTRACT.

Defendant has not established that it is entitled as a matter of law to summary judgment as to its claim for breach of contract. Under Georgia law, the elements for a breach of contract claim are: "the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." Song v.

eGPS Solutions I, Inc., 371 Ga. App. 357 (2024) (internal citations omitted). Here, Defendant has not shown a breach of the Contract as a matter of law.

Tobey and Defendant entered a Contract for Tobey to rent the Truck for a period of time. Ex. F. Tobey maintains that he provided Defendant with a credit card when initially renting the Truck. Pl's Depo. 35:1 – 35:3, 35:20, 36:1-3, 44:8, 100:7 – 100:8. At the time of the rental, Defendant's normal practice was to obtain payment from renters prior to the rental period. Shaffer Depo. 28:10 – 28:14. It follows, therefore, that Tobey paid for his initial rental period at the time he rented the Truck. Moreover, paragraph 16 of the Contract states, "[p]ayment is due upon Lowe's request. You consent to the reservation of credit for estimated charges due, and authorize Lowe's to process all amounts due on your credit card."

Tobey testified that he has not received an invoice for the balance of the rental period. Pl's Depo. 84:17 – 84:18 ("I never received a statement, bill, nothing."). This testimony is corroborated by Shaffer who stated to his knowledge Tobey had not been contacted to pay the additional money for the rental. Shaffer Depo. 28:18. Because the undisputed facts do not reveal whether a Tobey has breached his Contract with Defendant, summary judgment as to this claim should be denied.

V.    TOBEY'S CLAIM FOR ATTORNEY'S FEES PURSUANT TO O.C.G.A. § 13-6-11 SHOULD BE DETERMINED BY A TRIER OF FACT.

Tobey's claim for attorney's fees under O.C.G.A. § 13-6-11 should be determined by the trier of fact. See Clearwater Constr. Co. v. McClung, 261 Ga.

App. 789, 789 (2003) (finding "[q]uestions concerning bad faith, stubborn litigiousness, and unnecessary trouble and expenses are generally questions for the trier of fac to decide."). Pursuant to O.C.G.A. § 13-6-11,

> The expenses of litigation generally shall not be allowed as part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expenses, the jury may allow them.

Here, Tobey's claim for attorney's fees is premised on a theory of bad faith arising out of the tort of malicious prosecution. Specifically, a trier of fact could find that Defendant's employees acted in bad faith in either knowingly made false statements to law enforcement or willingly disregarded the internal procedure for reporting unauthorized use. Thus, summary judgment as to Tobey's claim for attorney's fees pursuant to O.C.G.A. § 13-6-11 should be denied.

## CONCLUSION

Because the record is replete with disputed material facts, Tobey respectfully requests that the Court deny each of Defendant's requests for summary judgment

Respectfully submitted this 20th day of June 2024.

**EPPS, HOLLOWAY, DELOACH
& HOIPKEMIER, LLC**


BY:  ____/s/ Adam L. Hoipkemier____
       Adam L. Hoipkemier
       Georgia Bar No. 745811
       ***Attorney for Plaintiff***

1220 Langford Drive
Building 200-101
Watkinsville, Georgia 30677
(706) 508-4000
adam@ehdhlaw.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in 14-point Times New Roman font.

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT upon all parties by electronic filing with the CM/ECF system for the Northern District of Georgia which will deliver notice to all counsel of record.


       /s/ Adam Hoipkemier
       Adam Hoipkemier